JAMES A. and ARLYS M. GUTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Guth v. Commissioner
Docket No. 17112-83.
United States Tax Court
T.C. Memo 1987-522; 1987 Tax Ct. Memo LEXIS 514; 54 T.C.M. (CCH) 878; T.C.M. (RIA) 87522; October 6, 1987. Peter R. Stromer, for the petitioners. Paul J. Krug, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Tax Year Ended
Tax Deficiency
Section 6653(a)(1) [1]
Section 6653(a)(2)
December 31, 1979
$ 3,046
$ 152
-0-
December 31, 1980
3,580
179
-0-
December 31, 1981
3,459
173
To be determined
*515 Petitioners concede the deficiency determinations and the additions to tax. The only issue to be resolved is whether petitioner Arlys M. Guth (hereinafter "Arlys" should be relieved of liability pursuant to section 6013(e), the so-called innocent spouse provision. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners, husband and wife, filed joint tax returns for all years in issue. They resided in Belmont, California at the time they filed the petition herein. Petitioners had been married for nearly six years when they separated on April 1, 1982. They were divorced on August 15, 1983. Arlys is a nurse's assistant. She has a limited knowledge of financial matters and is inexperienced in the preparation of income tax returns and in the balancing of checkbooks. Throughout their marriage, petitioner James A. Guth (hereinafter *516 "James") alone handled all of the couple's finances. He handled the couple's financial affairs, balanced their checkbook, had access to credit cards, and paid the bills. Arlys signed only one check during their six-year marriage, and this occured only after the couple's separation. Whenever Arlys received a paycheck, she turned it over to James. James did not permit Arlys an allowance. Whenever Arlys desired to make a purchase, she had to first obtain James' permission. James prepared the couple's income tax returns for all years in issue. Arlys had no involvement in the preparation of these returns; she merely gave James her W-2 forms. Once James completed the tax return, he would tell Arlys to sign it, which she did even though she received no explanation of its content. Simply stated, Arlys fulfilled the stereotype of a "dutiful wife" who did what her husband told her to do. In their 1979, 1980, and 1981 tax returns, petitioners claimed deductions of $ 6,898, $ 8,642, and $ 8,658, respectively, for contributions allegedly made to the Universal Life Church (hereinafter "ULC"). They now concede that they are not entitled to these deductions. James' involvement in ULC *517 began near the time of his marriage to Arlys in 1977. He formed his own ULC congregation (under the name "Carlmont ULC") to obtain perceived tax advantages, but he did not inform Arlys of his actions for he knew that she would be upset by his use of the church for such purposes. Rather, he told Arlys that he formed Carlmont ULC because his beliefs were different from those endorsed by other religions. Arlys involvement with, and knowledge of, Carlmont ULC was minimal. Although designated as treasurer, Arlys knew little about Carlmont ULC's financial workings or operations. James alone prepared and signed all checks to Carlmont ULC from his and Arlys's joint checking account, payable to himself; and without any explanation as to their purpose, he told Arlys to sign them, which she did. Although Arlys knew that there were checks to and from the Carlmont ULC account, she thought they were used solely to further her husband's religious activities. Respondent disallowed the claimed contribution deductions, which petitioners did not contest. However, Arlys contends that she is an innocent spouse and thus qualifies for relief from the tax liability resulting from such disallowance; *518 respondent contends otherwise. OPINION Spouses filing a joint tax return are jointly and severally liable for the tax arising therefrom. Section 6013(d)(3). However, if a taxpayer spouse satisfies the requirements of section 6013(e), he or she is relieved from such joint and several liability. Under the circumstances of the present case, the spouse seeking to invoke the protection of section 6013(e) must satisfy all of the following requirements with respect to each taxable year involved: (1) a joint return was filed (section 6013(e)(1)(A)); (2) such return contains a substantial understatement of tax (sections 6013(e)(1)(B); and (e)(3)); (3) the substantial understatement is attributable to grossly erroneous items of the other spouse (sections 6013(e)(1)(B); and (e)(2)); (4) in signing the return, the spouse claiming protection did not know, and had no reason to know, that there was such a substantial understatement (section 6013(e)(1)(C)); (5) taking into account all the facts and circumstances, it is inequitable to hold the spouse claiming relief liable for the deficiency in tax attributable to such substantial understatement (section 6013(e)(1)(D)); and (6) *519 the understatement exceeds a specified percentage of the adjusted gross income for the preadjustment year of the spouse claiming protection (section 6013(e)(4)). The spouse seeking relief has the burden of proving that all six requirements are satisfied. Welch v. Helvering,290 U.S. 111 (1933); Sonnenborn v. Commissioner,57 T.C. 373, 381-383 (1971); Rule 142(a). If all the requirements of section 6013(e) are satisfied, the so-called innocent spouse is relieved of liability not only for the deficiency in tax, but for interest, penalties, and other amounts as well, to the extent such liability is attributable to the substantial understatement. Section 60113(e)(1). The innocent spouse provision is remedial, for "Congress intended the [innocent spouse] exception to remedy a perceived injustice,and we should not hinder that praiseworthy intent by giving the exception an unduly narrow or restrictive meaning." Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975) (Fn. ref. omitted); accord Allen v. Commissioner,514 F.2d 908, 915 (5th Cir. 1975), affg., revg. and remanding on another point 61 T.C. 125 (1973). *520 Here, the first and second requirements of section 6013(e) are satisfied for each year at issue. With respect to the third requirement, respondent concedes that the deductions were grossly erroneous; therefore, we need determine only whether such deductions were "attributable to" James. Section 6013(e)(1)(B). The decision to use Carlmont ULC as a means of obtaining charitable contribution deductions was entirely James'. He neither consulted with, nor asked the permission of, Arlys before setting up his church or making the purported contributions. In fact, Arlys was unaware of the financial motivations behind James' involvement with Carlmont ULC. We, therefore, conclude that the substantial understatements are attributable solely to the grossly erroneous items of James. The next element Arlys must prove is that she did not know of, and had no reason to know of, the substantial understatements. The cases are clear that the spouse claiming to be relieved from liability must be unaware of the circumstances which give rise to the understatement, and not merely to the tax consequences of the facts. Purcell v. Commissioner,86 T.C. 228, 238 (1986), affd. 826 F.2d 470 (6th Cir. 1986); *521 Smith v. Commissioner,70 T.C. 651, 672-673 (1978); Quinn V. Commissioner,62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975); McCoy v. Commissioner,57 T.C. 732 (1972). Arlys testified (and we find her testimony credible) that she did not know that James' involvement with Carlmont ULC derived from anything but his desire to begin a church that accorded with his own religious beliefs. In view of Arlys' testimony, we find that she was unaware that James established Carlmont ULC for tax reasons. We next must determine whether Arlys had reason to know of the circumstances which gave rise to the substantial understatements. The applicable test is whether a reasonable person in the taxpayer's spouse's position could have been expected to know of such understatements at the time of signing the return. Sanders v. United States, supra, at 166-167; Terzian v. Commissioner,72 T.C. 1164, 1170 (1979); Mysse v. Commissioner,57 T.C. 680, 697-699 (1972). One factor relevant to the determination of this question is whether any unusual or lavish expenditures were made. Mysse v. Commissioner, supra, at 699. *522 No evidence of such expenditures was presented in this case. Another factor is the degree of involvement of the spouse claiming relief in the couple's financial affairs. Quinn v. Commissioner, supra;Sonnenborn v. Commissioner, supra, at 381-382. Arlys' involvement in the couple's financial matters was extremely limited. James controlled all of the couple's financial activities, including the maintenance of the checking account and preparation of the income tax returns. Arlys' involvement was limited to turning her W-2 forms and paychecks over to James, and signing checks and income tax returns under James' direction. James made no attempt to explain the income tax returns to Arlys or the purpose of the checks that he told Arlys to sign. In fact, James was careful to keep his true motivations for his involvement with Carlmont ULC from Arlys, masking his desire for financial gain in professed religions concerns. We conclude, therefore, that as a reasonable person with limited involvement in financial matters, Arlys did not know of, nor should she have known of, the substantial understatements contained in the returns. The fifth requirement concerns *523 the equitableness of holding the spouse seeking relief liable for deficiencies in tax attributable to the substantial understatements. Section 6013(e)(1)(D). The determination of whether it is inequitable to hold a person liable for the deficiency in tax is to be determined on the basis of all the facts and circumstances. Section 6013(e)(1)(D); section 1.6013-5(b), Income Tax Regs. In making such determination, a factor to be considered is whether a significant benefit was received by the spouse as a result of the understatements. Section 1.6013-5(b), Income Tax Regs.; [2]Purcell v. Commissioner, supra at 241. However, normal support is not a "significant benefit" for purposes of determining whether denial of innocent spouse relief would be equitable under section 6013(e)(1)(D). Section 1.6013-5(b), Income Tax Regs.; Purcell v. Commissioner, supra at 242; Terzian v. Commissioner, supra at 1172; Mysse v. Commissioner, supra at 699. *524 There is no evidence that Arlys received any benefit from the understatements. James entirely controlled the family finances and did not allow Arlys to have access to the couple's money. Every purchase Arlys desired to make required James' prior approval. Even if the understatements did insure to Arlys' benefit, there is no evidence that such possible benefit exceeded normal support. Another factor relevant to the determination of the equitableness of granting relief to the spouse claiming protection is whether the spouses have been divorced. Section 1.6013-5(b), Income Tax Regs.; Terzian v. Commissioner, supra at 1173; Sonnenborn v. Commissioner, supra at 381. Here, divorce occurred on August 15, 1983. Thus, based upon the record as a whole, we believe it would be equitable to grant Arlys innocent spouse relief. Respondent has conceded that Arlys has satisfied the sixth and final prerequisite to innocent spouse relief, that is, that the understatements exceed 10 percent of Arlys' adjusted gross income of $ 20,000 or less for the preadjustment year. All the requirements of section 6013(e) having here been satisfied, we conclude that Arlys *525 is an innocent spouse for all years in issue. To reflect the foregoing, Decision will be entered for respondent with respect to James A. Guth. Decision will be entered for petitioner Arlys Guth.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Section 6013(e) was amended subsequent to the promulgation of sec. 1.6013-5(b), Income Tax Regs.↩ Prior to its amendment, sec. 6013(e) specifically required that consideration be given to "whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income.''. Although sec. 6013(e), as amended, no longer specifically requires us to determine whether a spouse significantly benefited, this factor is still to be considered in determining whether it is inequitable to hold a spouse liable. See H. Rept. No. 98-432 (Part 2), 1501, 1502 (1984).